**Dr. William McCANN, Plaintiff,**

v.

**Dr. Alejandro RUIZ, et al., Defendants.**

**Civ. No. 90–2164 (JP).**

United States District Court,
D. Puerto Rico.

July 30, 1992.

Judith Berkan, Rio Piedras, P.R., Federico Lora López, Hato Rey, P.R., for plaintiff.

Rubén Nigaglioni, James D. Noel, III, Ledesma, Palou & Miranda, Hato Rey, P.R., for defendants Ruiz, Smith, Joyce, Soto, Schellenkens, Larue.

Engadi Charneco Barreto, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants Del Valle and Angleró.

Pedro Santiago Torres, San Juan, P.R., for defendant PREPA.

## ORDER

PIERAS, District Judge.

The Court has before it a wave of post-trial motions in this case, including (i) plaintiff's Motion to Amend Judgment to Include Prejudgment Interest dated April 7, 1992 (docket No. 131–A), (ii) plaintiff's Motion Submitting Bill of Costs dated April 7, 1992 (docket No. 131–C), (iii) the UPR-related defendants' Request for a New Trial dated April 9, 1992 (docket No. 133), (iv) the UPR-related defendants' Motion for a New Trial or Remittitur dated April 9, 1992 (docket No. 134), and (v) the UPR-related defendants' Request for Judgment as a Matter of Law dated April 9, 1992 (docket No. 135). Also pending is plaintiff's prayer

for injunctive relief in the form of reinstatement which the parties stipulated would be resolved by the Court after the jury issued its verdict on plaintiff's legal claims.

## I. Background

Plaintiff, Dr. William McCann, is a prominent seismologist who specializes in the seismology of the Caribbean. From 1986 to 1991, Dr. McCann was employed as an associate professor in the Geology Department of the Mayagüez Campus of the University of Puerto Rico (hereinafter "UPR"). From 1987 to 1990, he also acted as Director of the Seismic Network, a series of seismic stations and recording instruments owned and operated by UPR, for which he received an additional compensation. The Network had been owned by defendant Puerto Rico Electrical Power Authority ("PREPA"), a public corporation engaged in the production of electrical power, until 1988, at which time the Network's property was transferred to UPR. The Network was originally operated by the United States Geological Survey, but through a series of agreements operational responsibilities were transferred to the Mayagüez Campus in 1987.

On October 21, 1989, Dr. McCann appeared on a radio program, during which he questioned the location of a coal-induced power plant to be located in Mayagüez, the plans for which were developed by PREPA. He stated that in his view the plant was to be located too close to a potentially active seismic fault line and therefore represented a possible danger to the people of Puerto Rico. On the following day, his comments were reported in a local newspaper. These reports precipitated a series of discussions between high-level PREPA officials concerned about the possible impact of plaintiff's statements, particularly defendant Orlando Angleró, and the other professors working in the Geology Department. Angleró and other PREPA officials already knew most of the professors in the department, particularly defendant David Larue, because PREPA had provided a series of research grants to various of the professors.

In his complaint plaintiff alleged that the defendants proceeded to retaliate against him because of the comments he had made. This retaliation took the form of the non-renewal of his contract as Director of the Seismic Network, the non-renewal of his probationary contract as associate professor, the denial of his request for a tenured professorship, and public statements by the defendants accusing the defendant as being a *farsante* (fraud). Plaintiff brought this action seeking injunctive relief and monetary damages claiming that defendants' retaliatory acts constituted violations of various of his constitutional rights. He also sought monetary damages for alleged libel/slander. Plaintiff's constitutional claims under the first amendment and the substantive due process clause of the fourteenth amendment, and Puerto Rico law of libel/slander, were submitted to a jury, which found in plaintiff's favor on each cause of action and awarded $605,000.00 as compensatory damages and an additional $145,000.00 as punitive damages.

## II. Injunctive Relief

In the prayer for relief set forth in his First Amended Complaint, plaintiff requested, among other remedies, injunctive relief in the form of reinstatement to his positions as Director of the Seismic Network and Professor of Geology, as well as the granting of tenure on his behalf for his professorship. The Court has the ability to award such relief since the full range of a district court's injunctive and equitable powers is available to remedy violations of 42 U.S.C. § 1983. *See Martinez v. Procunier*, 354 F.Supp. 1092 (N.D.Cal.1973) (three-judge court) (per curiam), *aff'd*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Since the Court finds (*see infra* at pp. 611–14) that the only constitutional violation which plaintiff established at trial was of his first amendment rights, in deciding whether reinstatement is appropriate the Court has remained mindful of the balance it must weigh between plaintiff's interest in freely

exercising his right to free speech and the State's interest in maintaining the efficiency of its institutions. *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983).

█ The Court hereby GRANTS plaintiff's requests for injunctive relief. He proved that the violations he alleged occurred and the Court concludes that reinstatement is necessary to rectify the grave harms caused by defendants. The Court therefore ORDERS that plaintiff's probationary contract as Professor of Geology be renewed for a period of one year beginning on August 15, 1992. The plaintiff should be reinstated in his position at the salary he received upon being dismissed, to which amount should be added any standard cost of living increase that has been effectuated by the University since plaintiff's departure.

In addition, the Court ORDERS that the University conduct a new round of tenure review procedures to replace the tainted procedures provided to plaintiff. Since the procedure generally employed by the University for review of tenure requests—which involves reviews and recommendations by the relevant departmental personnel committee, the departmental director, the relevant faculty personnel committee, the faculty dean, the Administrative Board, and the Chancellor—has been irretrievably tainted in regard to plaintiff, it cannot be used for his tenure review. The Court therefore directs that plaintiff's tenure review should be conducted by a two-step process. First, the University must constitute an independent six-person committee to review Dr. McCann's request for tenure. The members of this committee must be either (i) individuals within the University of Puerto Rico system who (a) do not work on the Mayagüez campus and (b) have had no official responsibilities that have caused

them to be involved in issues regarding Dr. McCann, or (ii) individuals outside of the University of Puerto Rico system who similarly have had no connection with issues involving Dr. McCann. To the extent that additional compensation is required to pay for the services of any of these individuals, such costs shall be borne by the University.[1]

The six-person committee shall conduct its review of Dr. McCann and submit its recommendation on whether or not to confer tenure directly to the Administrative Board of the University of Puerto Rico on or before March 15, 1993. The Board may then act immediately, implementing the committee's recommendation, or it may conduct its own review. If Dr. Alejandro Ruiz, Dr. Olga Hernández, and Dr. Stuart Ramos continue to be members of the Administrative Board in March of 1993, they must be excluded from any matters relating to the tenure review of Dr. McCann. The Administrative Board must then render a decision on or before June 1, 1993. This decision shall be the final.

The Court further ORDERS that plaintiff be reinstated by the University as Director of the Seismic Network as of August 15, 1992, and that he again be paid the additional compensation awarded for these duties. In addition, plaintiff must be allowed immediate and unrestricted access to all research data denied to him, as well as to the offices and facilities of the Seismic Network.

III. Plaintiff's Motion to Amend Judgment to Include Prejudgment Interest

Prior to submission of this case to the jury, the parties stipulated that the question of prejudgment interest on plaintiff's state law claim for libel/slander be resolved by the Court after the jury's verdict was rendered. Plaintiff has requested that the Court award prejudgment interest on

---

1. The Court understands that an integral part of any tenure review process is an analysis of a candidate by members of his or her department since these individuals are most familiar with the candidate and with his work in his area of

expertise. In this instance, however, the University has forfeited the right to conduct such a review because of the conduct of defendants, who obviously cannot be involved in the tenure review of Dr. McCann.

his recovery of $255,000.00 on his Puerto Rico law claim.

■ Pursuant to Rule 44.3 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A.App. III, Rule 44.3 (Supp.1989), the court may impose on an obstinate party the payment of prejudgment interest at a statutorily-mandated rate. To find "obstinacy," a court must determine a litigant to have been unreasonably adamant in defense of a case, wasting time and causing the court and other litigants unnecessary expense and delay. *Accord De León López v. Corporación Insular de Seguros*, 931 F.2d 116, 126 (1st Cir.1991) (citing *La Playa Santa Marina, Inc. v. Chris–Craft Corp.*, 597 F.2d 1, 7 (1st Cir.1979); *Soto v. Lugo*, 76 P.R.R. 416, 419 (1954)). Plaintiff asserts that he is entitled to prejudgment interest because his recovery on his libel/slander claim—based on defendants' public charges that defendant was a liar who was trying to blackmail the people of Puerto Rico—was unquestionably valid and that defendants unreasonably refused to concede this point at any reasonable stage in the litigation. Defendants respond that since plaintiff is a public figure and was therefore required to show actual malice on the part of defendants to recovery on his libel/slander claim, defendants unwillingness to concede plaintiff's charge on this claim was not unreasonable. The Court concurs with the defendants and finds that their conduct was not obstinate. They presented a vigorous, albeit failed, defense to plaintiff's charge of libel/slander which cannot fairly be characterized as unreasonable. Plaintiff's motion for prejudgment interest is therefore DENIED.

## IV. Plaintiff's Motion Submitting Bill of Costs

■ Plaintiff submitted a bill of costs pursuant to 28 U.S.C. § 1920 requesting reimbursement in the amount of $12,918.35 for costs associated with the litigation of his case. Defendants object to only two of the items included by plaintiff. They contend: (1) that the costs of translating transcripts into the English language should not be taxed because plaintiff elected to

take depositions in Spanish; and (2) that the costs of expedited trial transcripts that plaintiff requested on three occasions should not be taxed. The Court finds that the costs objected to by defendants should not be taxed since they were incurred for the convenience of the plaintiff. Plaintiff's Bill of Costs is therefore GRANTED in part and defendants are ORDERED to pay to plaintiff the amount of $10,925.35 as costs.

## V. UPR–Related Defendants' Attacks Against the Jury Verdict

The UPR-related defendants have mounted multiple attacks against the jury's verdict. The Court will address defendants' contentions *seriatim*.

### A. *First Amendment*

■ The UPR-related defendants attack the jury's verdict in plaintiff's favor on his first amendment cause of action on three grounds. First, they assert that none of the defendants could have caused the denial of plaintiff's request for tenure or the termination of plaintiff from his professorship because none of them ultimately held the power to make these decisions. Defendants presented this argument to the jury and it failed. The jury found, and the evidence bears out, that the retaliatory actions taken by the UPR-related defendants resulted in, and thus caused, the denial of plaintiff's request for tenure and his dismissal from his professorship.

The UPR-related defendants have also renewed the second prong of their causation argument, asserting that the evidence showed as a matter of law that the denial of plaintiff's request for tenure and his dismissal from his position as professor would have occurred regardless of his speech-related activities, essentially because he was a troublemaker. They assert that plaintiff failed to show that the gag order issued against him was an unconstitutional prior restraint. Each of these assertions is fanciful. Plaintiff overwhelmed defendants on each of these issues at trial. The jury's findings on these issues were not only supportable, but inevitable.

Finally, the UPR-related defendants charge that the plaintiff did not establish that the interests of the state in maintaining an efficient department did not outweigh the interest of plaintiff in engaging in his speech related activity. They attempted to convince the jury of their interests, asserting primarily that the comments made by plaintiff which led to this lawsuit were based on confidential documents under the control of UPR–Mayagüez and owned by PREPA. Plaintiff presented ample evidence, consisting primarily of testimony of the defendants themselves on cross-examination, which allowed the jury to reasonably reject defendant's claims. Each of the UPR-related defendants' motions attacking plaintiff's first amendment recovery are therefore DENIED.

### B. *Substantive Due Process*

In its Opinion & Order dated February 11, 1992, 788 F.Supp. 109, which ruled upon defendants' motion for summary judgment, the Court addressed each of plaintiff's alleged causes of action, including those under the due process clause of the fourteenth amendment. As to plaintiff's allegations under the *procedural* due process clause, the Court rejected the claims outright. The Court held that since plaintiff was not a tenured professor, and had not achieved any sort of "de facto tenure," he held no *property* interest in his positions protectable under the fourteenth amendment.

The Court recognized, however, that plaintiff might have had a protectable *liberty* interest "in [his] reputation—at least where the injury to reputation is likely to be sufficiently severe to interfere with the exercise of other fundamental freedoms such as ... the right 'to engage in any of the common occupations of life.'" *Beitzell v. Jeffrey*, 643 F.2d 870, 877 (1st Cir.1981) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923);

*Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The Court stated that if the jury found that defendants, in connection with the dismissal of plaintiff, had made statements which damaged his standing or reputation, plaintiff might be entitled to a "name clearing hearing." *Accord Owen v. City of Independence*, 560 F.2d 925 (8th Cir.1977), *vacated on other grounds*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The Court found, however, that the defendants provided plaintiff with sufficient procedures to allow him to clear his name and that plaintiff was therefore entitled to no recovery for any infringement on his liberty interests in his reputation.

As to plaintiff's cause of action under the *substantive* due process clause,[2] the Court declined to enter summary judgment, finding that an opportunity for recovery did exist. Plaintiff relied on *Newman v. Commonwealth of Massachusetts*, 884 F.2d 19 (1st Cir.1989), *cert. denied, Newman v. Burgin*, 493 U.S. 1078, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990) (footnote omitted), for the proposition that "school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation." *Id.* at 25. The Court found that if the plaintiff could prove that the procedures he was provided were in fact a "sham," so that the reasons for dismissing him from his positions were "unrelated to the educational process ... or ... wholly unsupported by a basis in fact" (*McEnteggart v. Cataldo*, 451 F.2d 1109, 1111 (1st Cir.1971), *cert. denied*, 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972)), he might be entitled to substantive due process recovery based on the decision to deny him tenure. The Court advised the plaintiff in a footnote, however, of the problems he would face in setting forth a valid substantive due process claim:

**2.** The substantive due process clause has in the past been disfavored by the courts as a basis of recovery. Where the procedural due process clause requires that the government institute sufficient procedural safeguards when depriving an individual of life, liberty, or property, the

substantive due process clause provides for recovery against the government where liberty interests, which have been narrowly defined to include interests implicating fundamental constitutional rights, are impinged.

The Court notes that several hurdles must be cleared by plaintiff to recover under the substantive due process clause in this case. First, *Newman*, which discusses the rights of a "tenured teacher" might appear to contain a threshold requirement that plaintiff show a property interest in his job—a requirement that the Court has already found plaintiff cannot meet. On the other hand, if plaintiff succeeds in showing that he had a protected "liberty" interest associated with his position, there appears to be no reason why the protections set forth in *Newman* should not carry over to his situation. Second, the *Newman* court recognized that "the courts are not yet unanimous on whether this substantive right exists." 884 F.2d at 25. Plaintiff will have to show that the right continues to be recognized in this circuit. Third, the *Newman* court was faced with claims that a decision was "arbitrary and capricious." Plaintiff will have to establish that the protection should apply in situations where the decision is the result of intentional retaliation. Since neither of the parties has explored the contours of these issues to this point, the Court expects that it will receive from them considerably more argumentation on the applicability of the substantive due process protections to this case.

*McCann v. Ruiz*, 788 F.Supp. 109, 120 n. 8 (D. Puerto Rico 1992).

During the trial, as has been the case throughout this litigation, the parties did not concentrate heavily on plaintiff's claims under the substantive due process clause. Instead, primary consideration was given to plaintiff's first amendment and libel/slander causes of action, which are the crux of plaintiff's case. When defendants made their motion for a directed verdict, they offered only a short, broadside attack against plaintiff's substantive due process claim. Defendants' objection to the substantive due process instruction given to the jury was similarly non-specific. In their post-trial motions, however, defendants address the propriety of submitting the substantive due process claim to the jury in greater detail. They argue:

[T]he substantive due process claim necessarily entailed either proof involving a violation of freedom of speech or proof involving a violation of another liberty interest, such as reputation, honor and integrity. The substantive due process claim could not be based on a property interest, because this Court had already found that no such interest existed. Furthermore, the substantive due process claim could not have been based on harm to reputation, since the Court held that the plaintiff was given an adequate opportunity to give his side of the story with respect to claims against his reputation.

Defendants' argument repeats much of the Court's discussion of the substantive due process cause of action, particularly the limitations which the Court recognized on the claim. Defendants' argument fails, however, to take the necessary next step of pointing out that plaintiff failed to establish an alternative liberty interest on which he could have based substantive due process recovery. Such an alternative interest would have been the only valid basis of a substantive due process recovery given the Court's prior finding that no property interest existed and that adequate procedures were provided to protect plaintiff's liberty interest in reputation.

Defendants' post-trial attack on plaintiff's substantive due process claim does by implication raise a question regarding whether plaintiff presented an alternative liberty interest on which to base his substantive due process recovery. Further research into the contours of a valid substantive due process cause of action has revealed, however, that this was not the appropriate question to be asked.

The First Circuit has had several occasions recently to address substantive due process doctrine and each of the cases has suggested, either specifically or by implication, that "[t]he history of substantive due process doctrine indicates that it is to be applied with 'caution and restraint.'" *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir.1991) (citations omitted); *see also Néstor Colón Medina &*

*Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir.1992) ("Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach.") The circuit has stated:

> The doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe. liberty or injure property in violation of state law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.'"

*PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31–32 (1st Cir.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1151, 117 L.Ed.2d 400 (citing *Committee of U.S. Citizens in Nicaragua v. Reagan*, 859 F.2d 929, 943 (D.C.Cir.1988) (citations omitted)).

Based on these principles, the circuit court has stated that liberty interests protected under the procedural component of the due process clause are not necessarily protected under its substantive component. As a result, "it is only when some *basic and fundamental principle* has been transgressed that 'the constitutional line has been crossed.'" *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38

L.Ed.2d 324 (1973) (emphasis added)); *see also Michael H. v. Gerald D.*, 491 U.S. 110, 122, 109 S.Ct. 2333, 2341, 105 L.Ed.2d 91 (1989) (plurality opinion) (citation omitted) *Furtado v. Bishop*, 604 F.2d 80, 95 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).[3]

As a result, plaintiff could not establish a violation of his substantive due process rights merely by proving a violation of a protectable liberty interest. Instead, he was required to show that defendants violated a protectable liberty interest that reflected some *fundamental constitutional right*. The plaintiff could not do this. His substantive due process claim could not be predicated on defendants conduct which damaged his reputation. First, as stated above, the Court previously held that defendants provided plaintiff with procedures sufficient to provide him with an opportunity to cure any damage to his reputation. More importantly, an individual's liberty interest in his reputation does not reflect a *fundamental constitutional right* and is therefore not protected under the substantive component of the due process clause. In *Santiago de Castro, supra*, the First Circuit, in stating that a plaintiff cannot rely on procedural due process jurisprudence when asserting a protected interest under the substantive due process clause (943 F.2d at 129), specifically stated that reliance on *Board of Regents v. Roth*, which Dr. McCann relied on in part in this case to support his substantive due process recovery, was "mistaken." *Id.*[4]

3. Based on this standard, the circuit has held that a regulatory board does not transgress constitutional due process requirements merely by making decisions "for erroneous reasons" or by making "demands which arguably exceed its authority under the relevant state statutes" (*Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982)), that "even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process" (*Amsden v. Moran,* 904 F.2d at 757 (citations omitted)), and that the "right to pursue ... employment free from emotional health risks resulting from [a] supervisor's verbal harassment" does not warrant substantive due process protection (*Santiago de*

*Castro v. Morales Medina*, 943 F.2d 129 (1st Cir.1991)).

4. In *Newman*, the First Circuit intimated that such liberty interest *might* be protected under the substantive due process clause. The Court stated:

> Our discussion ... assumes that it is plaintiff's *property* interest in her job that triggers her substantive due process rights. The decision to censure plaintiff may also have implicated a liberty interest because the charge of plagiarism likely would "seriously damage [her] standing and associations in [her] community." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). *See also Goss v. López*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Assum-

 Similarly, plaintiff cannot rely on defendants libelous and/or slanderous actions as the basis for his substantive due process recovery. First, plaintiff was separately compensated for such actions by the jury. More importantly, these are precisely the types of state-created rights which do not reflect *fundamental constitutional rights* and cannot be elevated to constitutional imperatives by recognizing them as protected interests under the due process clause.

 Finally, to the extent that plaintiff's substantive due process claim was based on defendants' retaliation for the exercise of free speech, it was coextensive with his first amendment claim. *Accord Néstor Colón Medina, supra,* at 45–46. The Court therefore ORDERS that defendants' motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure[5] is hereby GRANTED and plaintiff's substantive due process cause of action is DISMISSED.

### C. *Libel/Slander*

Finally, the UPR-related defendants contend that plaintiff failed to bring forth evidence at trial sufficient to support the jury's verdict in plaintiff's favor on his libel/slander claim, arguing that the plaintiff failed to show evidence of actual malice. This contention is untenable. Plaintiff brought forth more than sufficient evidence that defendants made statements that approached libel *per se* and that such statements were recklessly published within the campus of UPR–Mayagüez and to the general public. Each of the UPR-related defendants' motions regarding plaintiff's recovery under his libel/slander cause of action are therefore DENIED.

### VI. PREPA–Related Defendants' Attack on Jury Verdict

 The PREPA-related defendants have asked primarily for judgment as a matter of law, contending that plaintiff's evidence failed to connect any of these defendants to acts or omissions that would justify an award to plaintiff. The Court rejects these contentions. While the evidence against defendant Angleró and PREPA was not as compelling as that against the UPR-related defendants, plaintiff did present circumstantial evidence which showed (i) that several PREPA projects required consulting work by all of the defendant professors, (ii) that PREPA had a genuine stake in the Cogentrix facility, (iii) that defendant Angleró and PREPA were interested in economic benefits to be derived from the various projects, (iv) that they were concerned about Dr. McCann's comments and the impact they might have on the community and its willingness to accept the construction of the power plant in Mayagüez. The evidence showed that PREPA officials were in communication with the defendant professors—by telephone, telefax, and in person—immediately following the publication of the comments, and that soon after these consultations retaliatory action was taken against Dr. McCann. From these facts the jury could reasonably conclude that PREPA, through its agents, directed or influenced the defendant professors in their decision to retaliate against Dr. McCann. These motions of the

---

ing, without deciding, that this liberty interest would be protected by a clearly established substantive due process right, we have been given no reason to treat the property and liberty interests differently.... *Newman,* 884 F.2d at 24 n. 5. It was partly in reliance on this statement that the Court allowed plaintiff to proceed with his substantive due process claim and attempt to identify a protectable liberty interest. Since the circuit court specifically held in *Santiago de Castro* that reliance on cases like *Roth* in substantive due process actions is inappropriate, the Court assumes that its prior statement in *Newman* is no longer valid.

5. Rule 50(b) provides, in pertinent part:

Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.... If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and ... direct the entry of judgment as a matter of law.

PREPA-related defendants are therefore DENIED.

## VII. Reduction of Award

 All defendants assert that the total damages awarded by the jury to plaintiff were excessive. A jury award of damages should be respected unless it is "grossly excessive" or "shocking to the conscience" (*accord Joia v. Jo–Ja Service Corp.*, 817 F.2d 908, 918 (1st Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) (citations omitted)) or "so high that it would be a denial of justice to permit it to stand" (*accord Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 80–81 (1st Cir.1989)). The fact that a particular award is merely generous does not justify its being set aside. *Accord Kolb v. Goldring*, 694 F.2d 869, 871 (1st Cir.1982).

Any attempt to reduce plaintiff's award on his first amendment cause of action must be rejected. The evidence showed that as a result of the gag order that was placed on plaintiff and the various other types of retaliatory action, he was fearful of speaking out publicly. In addition, his research, which concerned issues of public concern, was curtailed by defendants' actions. It is a very difficult matter to put a value on such rights and interests, as well as that harms suffered by plaintiff and the public when his right to free speech was curtailed. It is flatly impossible to state that as a matter of law the amount that the jury compensated the plaintiff for the abridgment of his right to free speech was excessive.

On the other hand, the jury's award to plaintiff on his libel/slander cause of action is not sacrosanct and can be reviewed to determine whether it was reasonable based on the evidence of plaintiff's damages. Since the jury received evidence that plaintiff did not suffer great pecuniary loss as a result of defendants' actions, one can assume that the balance of the compensation provided by the jury was to compensate plaintiff for his pain and suffering—which the evidence showed consisted of tarnish to his reputation, concern about his future, the stigma that he suffered within the UPR system, and other related harms. The Court finds that the jury's award of compensatory damages for these harms in this case is grossly excessive and shocking to the conscience. The evidence presented to the jury of the extent of plaintiff's suffering simply could not support the sizable award that they provided. The evidence showed that plaintiff suffered emotional distress as a result of defendants' actions. He suffered a mild form of depression and was concerned about his future and the future of his family. He also suffered a measure of embarrassment and insult. Such suffering, however, which apparently did not require treatment nor should result in any permanent injury, cannot support an award of approximately a quarter of million dollars. The Court therefore finds that defendants' request to reduce the jury's award of compensatory damages on plaintiff's libel/slander claim is GRANTED and plaintiff's recovery must be reduced in the amount of $155,000.00, yielding a recovery of $100,000.00 on plaintiff's libel/slander claim.[6] All other requests to reduce the jury's award are hereby DENIED.

## VIII. Conclusion

Based on the findings of the Court set forth in this Order, the Clerk shall issue an Amended Judgment which should (i) vacate the jury's verdict in favor of plaintiff on his substantive due process claim, thereby reducing plaintiff's award by $175,000.00, and (ii) reduce plaintiff's award on his libel/slander cause of action by $155,000.00, yielding a recovery of $100,000.00 on this claim.

IT IS SO ORDERED.

---

6. As an independent matter, the Court finds that based on the totality of the evidence presented at trial any award to Dr. McCann of compensatory damages in excess of $275,000.00 would be grossly excessive and unconscionable. The Court leaves undisturbed, however, the jury's awards of punitive damages to the plaintiff.