**Manuel Muniz CABRERO, Plaintiff,**

v.

**Dr. Alejandro RUIZ, et al., Defendants.**

**Civ. No. 92–1878 HL.**

United States District Court,
D. Puerto Rico.

May 24, 1993.

594

Jesus E. Cuza–Abdala, Santurce, PR, for plaintiff.

Ruben T. Nigaglioni, Ledesma, Palou & Miranda, James D. Noel, Ledesma, Palou & Miranda, Hato Rey, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment by Defendants Alejandro Ruiz ("Ruiz"), Karen Soto ("Soto"), Olga Hernández ("Hernández"), and Edmundo Carrero ("Carrero") in this action for monetary damages and injunctive relief under section 1983.[1] At the time of the incidents which give rise to this action, defendants were officials of the University of Puerto Rico, Mayaguez Campus ("the University"). Ruiz was the chancellor of the University, Soto was the director of its physical education department, Hernández was the dean of the faculty of arts and sciences, and Carrero was the associate director of the physical education department. Plaintiff Manuel Muñiz Cabrero ("Muñiz Cabrero") is the director of the University's sports complex. He alleges that Defendants have taken detrimental actions against him based on his political affiliation, thereby violating his First, Fifth, and Fourteenth Amendment rights.

In July 1983, Muñiz Cabrero was named director of the sports complex. This was a "career" position.[2] During that time the sports complex was administered as part of the faculty of arts and sciences, and Muñiz Cabrero reported directly to the chancellor of the University.[3] In August 1990, Ruiz became the chancellor. He proposed to the University's Administrative Board that the sports complex be transferred to the control of the department of physical education. On November 15, 1990, the Administrative Board, of which Ruiz and Hernández are members, unanimously approved this proposal, effective December 1, 1990.[4] In late November 1990, Ruiz and Hernández met with Muñiz Cabrero to inform him of this change. At the meeting, Ruiz told Muñiz Cabrero that henceforth he would have to answer to Soto.[5] A letter from Ruiz to Muñiz Cabrero dated November 30, 1990 also informed him of the reorganization.[6] This reorganization was to be temporary and subject to review in May 1991.[7] However, no review ever took place and the complex has remained under the control of the department of physical education. The alleged discriminatory behavior about which Muñiz Cabrero complains is this reorganization and the requirement that he answer to Soto. He alleges that this action was taken as part of a plot by the Defendants against him because he is an active member of the New Progressive Party. Puerto Rico's other principal political party, the Popular Democratic Party, was in power at the time of the reorganization.

Muñiz Cabrero complains of other actions taken against him as part of the alleged plot. He claims that the Defendants told members of the University community that they, not Muñiz Cabrero, were in charge of the sports complex; dispossessed him of his functions

1. 42 U.S.C. § 1983.

2. Under the Puerto Rico Public Service Personnel Act, the University of Puerto Rico must establish its own personnel regulations. P.R.Laws Ann. tit. 3, § 1338(5) (Supp.1988). These regulations create two classes of non-teaching positions: those of "career" and those of "confidence." *See* Reglamento General de la Universidad de Puerto Rico, Art. 73 (1990). Employees of confidence may be terminated at will. *Id.* Art. 73.1. By contrast, career employees can be removed only for cause.

3. Docket no. 12, attachment 5, at 53.

4. Docket no. 12, attachment 4; Docket no. 20, exhibit 10.

5. Docket no. 12, attachment 5, at 40–41.

6. Docket no. 20, exhibit 4.

7. Docket no. 20, exhibit 6.

as director of the complex; made defamatory statements about him; opened his correspondence; denied him use of keys to the complex; threatened to move him to a different office; controlled his access to his secretary; and constructively discharged him. Muñíz Cabrero filed his complaint on June 26, 1992. Defendants, in their motion for summary judgment, argue that Muñíz Cabrero's complaint is time-barred and that even if this complaint had been timely filed, Plaintiff is unable to make out a cause of action against the Defendants. Muñíz Cabrero has opposed this motion, arguing that his claim is not time-barred because Defendants' actions constitute a continuing violation of his constitutional rights. For the reasons put forth below, the Court grants Defendants' motion for summary judgment.

## DISCUSSION

### A. Statute of limitations

At the outset, the Court notes that summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). Additionally, the use of summary judgment may be appropriate in determining the applicability of a statutory time bar. *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992).

In Puerto Rico, the statute of limitations for filing a section 1983 claim is one year. *Id.* at 352–53; *De Leon Otero v. Rubero*, 820 F.2d 18, 19 (1st Cir.1987). The date of accrual for such a claim is determined by federal law. *Rivera–Muriente*, 959 F.2d at 353. The accrual period in section 1983

claims begin when the plaintiff knows, or has reason to know, of the harm on which his action is based. *Id.; Amoros Santiago v. Pérez*, 687 F.Supp. 34, 35 (D.P.R.1988). In the case before the Court, Muñíz Cabrero alleges injuries that arose out of the transfer of the sports complex to the physical education department on December 1, 1990. The accrual date for his claim under section 1983 would be the date on which he had reason to know of this reorganization. He had a meeting with Ruiz and Hernández in late November 1990 at which he was informed of the change. Additionally, Ruiz sent him a letter dated November 30, 1990 notifying him of the new arrangement.

Moreover, on December 12, 1990 a meeting was held among the personnel of the sports complex to explain the effects of the reorganization. At that meeting, Hernández informed the staff that the reorganization was experimental until May 1991. Muñíz Cabrero alleges that the reorganization was subject to review. It was also agreed at the December meeting that Soto would prepare the personnel's work schedules.[8] Additionally, by a letter dated April 17, 1991, Soto informed Muñíz Cabrero of his responsibilities under the reorganization.[9] On May 1, 1991, Muñíz Cabrero, Soto, and Carrero held a meeting to discuss the responsibilities described in the April 17 letter. At that meeting Soto told Muñíz Cabrero that in her absence Muñíz Cabrero had to report to Carrero; that she would make the work assignments and schedules of the sports complex staff; that Muñíz Cabrero would supervise the staff in their tasks; and that the woman who had been Muñíz Cabrero's secretary would report to Soto.[10] Muñíz Cabrero further alleges that Defendants unlawfully opened his mail and denied him keys to University buildings. In Soto's sworn statement she states that Muñíz Cabrero was absent from his job for 47 days from December 1990 to February 1991. As a result, she was forced to open correspondence addressed to Muñíz Cabrero that had to do with the administration of the sports com-

8. Docket no. 20, exhibit 6.

9. Docket no. 12, exhibit E.

10. Docket no. 12, exhibit F.

plex.[11] She also states that the keys to the sports complex were changed in May 1991 as a security measure.[12] This is uncontested by Muñíz Cabrero.

From the above it is clear that Muñíz Cabrero knew of the reorganization by December 1990. Moreover, he knew by May 1991 what his responsibilities would be and that he would be supervised by Soto and Carrero. He also had reason to know that as of May 1991 the reorganization was subject to review. Thus, he had until May 1992 to file a complaint for the alleged unlawfulness of this failure to review. Lastly, Defendants' allegedly unlawful opening of his mail and denying him keys had taken place by May 1991. The latest accrual date for the above alleged injuries would be some time in May 1991. Muñíz Cabrero filed his complaint on June 26, 1992, more than one year after he knew of these alleged injuries. Thus, his claim should be time-barred.

 Muñíz Cabrero argues, however, that he has been the victim of a continuing violation of his constitutional rights. The continuing violation theory applies in cases where there is a pattern or policy of discrimination, rather than a single act which would trigger the running of the limitations period. *Velázquez v. Chardón*, 736 F.2d 831, 833 (1st Cir.1984); *Amoros Santiago*, 687 F.Supp. at 35. If the alleged violation is made up of a pattern of separate acts, the prescription period begins anew with each subsequent violation. *Velázquez*, 736 F.2d at 833 (quoting *Pérez v. Laredo Junior College*, 706 F.2d 731, 733–34 (5th Cir.1983)). A plaintiff asserting a continuing violation must show that the discrimination is ongoing. *Velázquez*, 736 F.2d at 833. Thus, the determination to be made is one of whether a present violation exists or whether the plaintiff is merely suffering from the ongoing effects of past discrimination. *Amoros Santiago*, 687 F.Supp. at 36. A continuing violation does not exist if the plaintiff is only suffering from the continuing consequences or effects of a past discrimination. *De Leon Otero*, 820 F.2d at 19 (quoting *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir.1979)); *Velázquez*, 736 F.2d at 833. A politically discriminatory action such as a demotion followed by the defendants' repeated refusals to reinstate the plaintiff does not constitute a continuing violation. *De Leon Otero*, 820 F.2d at 19; *Velázquez*, 736 F.2d at 833. Moreover, the fact that the original action has caused plaintiff to suffer humiliation up to the present does not constitute a present violation. *Amoros Santiago*, 687 F.Supp. at 37.

 In the case before the Court, the acts which Muñíz Cabrero claims to be evidence of continuing political discrimination against him were merely consequences of the reorganization that took place in 1990. For example, he complains that Soto and Cabrero told members of the University community that they, not Muñíz Cabrero, were in charge of the sports complex. This is a logical consequence of their having been placed in charge of the complex by the reorganization. Muñíz Cabrero also complains that Defendants took over his responsibilities following the reorganization. Specifically, he asserts that they hired employees, prepared work schedules, oversaw the budget, controlled the use of the complex, and controlled the work of his secretary.[13] He presents as evidence of Defendants' plot to harm him the record of an administrative decision by Soto to hire a temporary worker for the sports complex.[14] Such actions are consequences of the 1990 reorganization that gave Defendants the responsibilities to take these steps.

 Muñíz Cabrero further complains that Ruiz and Hernández have continuously refused to transfer him to the supervision of someone other than Soto.[15] These repeated refusals to remedy the situation of which Muñíz Cabrero complains is not a continuing violation. *See De Leon Otero*, 820 F.2d at 19. In conclusion, Defendants had informed Muñíz Cabrero by April or May 1991 of the

---

11. Docket no. 12, attachment 3, at 3.

12. Docket no. 12, attachment 3, at 4.

13. *See* Docket no. 21, exhibit K, at 3 n. 4.

14. Docket no. 20, exhibit 14.

15. Docket no. 21, exhibit K, at 2.

changes in responsibilities that accompanied the reorganization.[16] The fact that Defendants have proceeded to take steps consistent with the information they provided Muñíz Cabrero does not constitute continuing violations. Because, the violations [17] of which Muñíz Cabrero complains are not continuing violations, his claim is time-barred.

### B. Due Process

■■■■ Even if Muñíz Cabrero's complaint were not time-barred, the Court would grant Defendants' motion for summary judgment for the following reasons. Muñíz Cabrero alleges that Defendants' actions have violated his procedural due process rights because he has been deprived of a notice or hearing on the reorganization. A plaintiff's procedural due process claim depends on his having been deprived of a property interest. *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 40 (1st Cir.1993); *Rivera–Muriente*, 959 F.2d at 352. These property interests are defined by state law. *Rodriguez–Pinto*, 982 F.2d at 41; *Rivera–Muriente*, 959 F.2d at 352. A public employee with a property interest in his employment has a right to a pretermination hearing. *Rivera–Ruiz v. González–Rivera*, 983 F.2d 332, 334 (1st Cir. 1993). However, an employee who has not been terminated has not lost a property interest, and therefore he cannot claim a violation of his procedural due process rights. *Rodriguez Pinto v. Tirado Delgado*, 798 F.Supp. 77, 83 (D.P.R.1992), *aff'd on this ground, rev'd on other grounds*, 982 F.2d 34

(1st Cir.1993); *Pietri Bonilla v. Alvarado*, 762 F.Supp. 451, 461 (D.P.R.1991).

■■■ In the case before the Court, Muñíz Cabrero has not been fired. He has the same position at the same salary with the same benefits that he received prior to the reorganization.[18] Moreover, none of the University's personnel regulations that Muñíz Cabrero refers to in his opposition to the motion for summary judgment create a property interest that has been violated by the reorganization. Accordingly, his claim for a violation of his procedural due process rights is without merit.[19]

■■■ Muñíz Cabrero also alleges that Defendants' arbitrary and capricious actions have violated his constitutional rights to substantive due process. It is true that substantive due process protects employees from state action that is arbitrary and capricious. *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir.1990); *Newman v. Com. of Mass.*, 884 F.2d 19, 25 (1st Cir.1989); *McCann v. Ruiz*, 788 F.Supp. 109, 119–120 (D.P.R.1992) ("*McCann I*"). However, substantive due process has been disfavored as a basis for constitutional redress. *Nestor Colón Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir.1992); *McCann v. Ruiz*, 802 F.Supp. 606, 612 n. 2 (D.P.R.1992) ("*McCann II*"). It is a doctrine that should be applied with caution and restraint. *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir.1991). It does not protect an individual from all government action that infringes liberty or property interests in violation of

**16.** Docket no. 12, exhibits E, F.

**17.** Muñíz Cabrero also alleges that Defendants have made defamatory statements about him. The Court notes that no specific dates of these alleged statements have been provided. More importantly, as discussed below at 597 n. 19, 597–98, such statements by themselves do not constitute a constitutional violation.

**18.** Docket no. 12, attachment 5, at 27, 57–58; attachment 3, at 1.

**19.** Muñíz Cabrero alleges that Defendants made defamatory statements harmful to his reputation. The Court notes that an employee's reputation may implicate liberty interests protected by the Fourteenth Amendment. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct.

2701, 2707, 33 L.Ed.2d 548 (1972). However, while a government employer's defamatory statements may be actionable under local law, they will not implicate an employee's liberty interests unless they are made in connection with the deprivation of another, more tangible, interest such as employment. *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 74 (1st Cir.1990); *Brennan v. Hendrigan*, 888 F.2d 189, 195 (1st Cir.1989). Muñíz Cabrero does not specifically allege defamation as part of his procedural due process claim. Had he made such a claim, it would fail because he has not lost his property interest in his employment. Therefore the alleged defamation was not made in connection with the deprivation of a more tangible interest.

some law. *Id.* at 130–31. Rather, substantive due process protects against government action that shocks the conscience. *Amsden*, 904 F.2d at 753–54; *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404, 410 (1st Cir.1990); *McCann II*, 802 F.Supp. at 614.

A substantive due process violation is one that transgresses a fundamental constitutional right. *Santiago de Castro*, 943 F.2d at 131; *McCann II*, 802 F.Supp. at 614. In the case before the Court, Muñiz Cabrero cannot point to a fundamental right that has been transgressed. To the extent that he is alleging a lost property interest, this Court above held that he has no claim because he has lost neither his employment nor any property interest he may have therein. *See Rodríguez Pinto*, 798 F.Supp. at 83; *Pietri Bonilla*, 762 F.Supp. at 461. To the extent that he is alleging a deprivation of his rights to free speech and association, it is coextensive with his First Amendment claim and is addressed in that context further below. *See Colon Medina*, 964 F.2d at 45–47; *McCann II*, 802 F.Supp. at 615. Lastly, to the extent that he is alleging a deprivation based on Defendants' defamatory statements, such defamatory statements do not reflect fundamental constitutional rights. *See McCann II*, 802 F.Supp. at 615. Accordingly, Muñiz Cabrero's claim for the violation of his substantive due process rights is also without merit.

*C. First Amendment*

■ Muñiz Cabrero also alleges that Defendants' actions have violated his First Amendment rights. He asserts, among other things, that he has been constructively discharged. However, a claim for constructive discharge arising out of a demotion or transfer cannot succeed when the plaintiff has not left his employment. *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703–704 (1st Cir.1993); *Pedro–Cos v. Contreras*,

976 F.2d 83, 85 (1st Cir.1992). Muñiz Cabrero has not left his position; therefore, he has no claim for constructive discharge.

■ With regard to the remainder of Muñiz Cabrero's First Amendment claim, a government employer's decisions regarding an employee's promotion, transfer, recall, or hiring may not be based on the employee's political affiliation. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 65, 110 S.Ct. 2729, 2732, 111 L.Ed.2d 52 (1990). However, the federal courts should not become embroiled in day-to-day workplace disputes between a government employer and its government employees. *Santiago de Castro*, 943 F.2d at 131; *Agosto-de-Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1217 (1st Cir. 1989); *Zayas Rodriguez v. Hernández*, 748 F.Supp. 47, 53 (D.P.R.1990). A cause of action for the violation of an employee's right to free association exists when a government employer's actions are severe enough to cause a reasonably hardy individual to compromise his political associations in favor of the prevailing party or when the employer's actions place plaintiff in a situation "unreasonably inferior" to the norm for his position. *Agosto-de-Feliciano*, 889 F.2d at 1217–18; *Zayas Rodriguez*, 748 F.Supp. at 53.[20]

■ The plaintiff has the burden of establishing by clear and convincing evidence the unreasonable inferiority of his position. *Rivera–Ruiz*, 983 F.2d at 335; *Rodriguez–Pinto*, 982 F.2d at 39; *Pietri Bonilla*, 762 F.Supp. at 459. The plaintiff must also show by a preponderance of the evidence that the employer's challenged actions were politically motivated. *Rivera–Ruiz*, 983 F.2d at 335; *Rodriguez–Pinto*, 982 F.2d at 39; *Pietri Bonilla* 762 F.Supp. at 460 n. 12. To determine whether the changes have placed the plaintiff in an unreasonably inferior position, the specific changes in the plaintiff's job must be examined. *Agosto-de-Feliciano*, 889

**20.** The Court is mindful that the Supreme Court's holding in *Rutan* may have limited the holding in *Agosto-de-Feliciano* and that the First Circuit Court of Appeals has acknowledged the existence of, but has not resolved, the question of what vitality *Agosto-de-Feliciano* continues to have. *See, e.g., Nereida–Gonzalez*, 990 F.2d at 705; *Rivera–Ruiz*, 983 F.2d at 335 n. 1; *Rodriguez–Pinto*, 982 F.2d at 38 n. 5, 42 (Torruella, J.

concurring and questioning the authority of *Agosto-de-Feliciano* ). Absent a definitive statement from the First Circuit on what vitality *Agosto-de-Feliciano* still has, this Court finds persuasive the use of the standards set forth in that case to sift through the evidence presented in political discrimination cases. *See Zayas Rodriguez*, 748 F.Supp. at 53.

F.2d at 1218. It is necessary to consider the duties, perquisites, and working environment of the plaintiff. *Id.* at 1220.

For example, an employee who has lost perquisites such as the office's best secretary or the luxury of working with minimal oversight has not met the unreasonably inferior standard. *Id.* at 1219. Muñíz Cabrero's situation is similar to the one just mentioned. He complains that he no longer was the immediate supervisor of the woman who was his secretary and that he was placed under Soto's supervision. These changes have not placed him in an unreasonably inferior position. He also asserts that he has been relieved of his managerial responsibilities such as hiring workers, setting work schedules, dealing with budget matters, and controlling the use of the sports complex.[21] However the job description for his position does not state that he will be responsible for hiring, setting schedules, or preparing budgets.[22] It does state that he supervise other workers and prepare reports for his supervisor. These are tasks for which he currently has responsibility.[23] It may be that prior to the reorganization Muñíz Cabrero had responsibilities that were not on his job description. However, the fact that he lost these responsibilities with the reorganization does not establish that his current position is unreasonably inferior to the norm. Rather, it appears that his current responsibilities are in accord with those on his job description. Because Muñíz Cabrero has not met his burden to show by clear and convincing evidence that his current position is unreasonably inferior to the norm, his First Amendment claim is without merit.

WHEREFORE, the Court hereby grants Defendants' motion for summary judgment.[24]

**IT IS SO ORDERED.**

---

**21.** Docket no. 21, exhibit K, at 3 n. 4; Docket no. 12, attachment 5, at 53–54.

**22.** Docket no. 20, exhibit 13.

**23.** *See* Docket no. 12, exhibits E, F, attachment 5, at 54.

---

**24.** Muñíz Cabrero also brought a Puerto Rico law claim based on supplemental jurisdiction. The Court has dismissed all his federal law claims. Accordingly, it also dismisses this Puerto Rico law claim.