E. Robert TEMPLE, Plaintiff,

v.

INHABITANTS OF THE CITY OF BELFAST, et al., Defendants.

Civil No. 98–CV–160–B.

United States District Court, D. Maine.

Dec. 4, 1998.

**62**

Edmond J. Bearor, Rudman & Winchell, Bangor, ME, for the Plaintiff.

Lee K. Bragg, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for Defendants Cheston, Lewis, Whitely & Belfast.

Marvin H. Glazier, Vafiades, Brountas & Kominsky, Bangor, ME, for Defendant Whitely.

Michael A. Dudy, Kozak, Gayer & Brodek, P.A., Bangor, ME, for Defendant Lewis.

Glen L. Porter, William DeVoe, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Defendant Cheston.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff E. Robert Temple ("Plaintiff"), Code Enforcement Officer for the City of Belfast, has filed a complaint against four Defendants asserting a number of claims for damages arising out of conduct occurring between the fall of 1997 and March 1998.[1] Essentially, Plaintiff claims he was subject to an investigation and hearing rife with illegalities, which were part of a highly orchestrated campaign by several maliciously motivated individuals to oust him from his position.

Plaintiff's Complaint alleges that Defendant City of Belfast ("Belfast") violated 42 U.S.C. § 1983 (Counts I, II, and III), the Maine Civil Rights Act, 5 M.R.S.A. § 4681 *et seq.* (Counts I, II, and III), and the Maine Freedom of Access Act, 1 M.R.S.A. § 401 *et seq.* (Count III) and committed defamation (Counts IV and VII); that Defendant Jon Cheston ("Cheston") committed defamation (Count V); that Defendant Michael Lewis ("Lewis"), Defendant Robert Whiteley

---

1. Originally, this case involved six defendants. On September 10, 1998, Plaintiff voluntarily dismissed Defendant Michael Hurley from the suit, and on September 16, 1998, the Court granted the Motion to Dismiss submitted by Defendant The Waldo Independent, Inc.

("Whiteley"), and Cheston engaged in tortious interference with a contract (Count VI); and that Lewis and Whiteley committed an invasion of privacy (Count VIII). Each Defendant has filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, the four Motions to Dismiss are GRANTED.

## I. MOTION TO DISMISS

When confronted with a Motion to Dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), the Court views all of Plaintiff's factual averments as true and indulges every reasonable inference in Plaintiff's favor. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). The Court may grant Defendants' Motion to Dismiss "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). The Court may consider a Rule 12(b)(6) motion to dismiss brought after a defendant has filed its answer if, as done here by Belfast, the defendant raises the failure to state a claim as an affirmative defense in its Answer. *See Gerakaris v. Champagne*, 913 F.Supp. 646, 650–51 (D.Mass.1996).

## II. BACKGROUND

Plaintiff was hired by Belfast as a licensed plumbing inspector in 1985. In 1987, Plaintiff became Belfast's Assistant Code Enforcement Officer, and in 1994, he was appointed Belfast's Code Enforcement Officer. In the spring of 1997, the City Council ("Council") awarded Plaintiff a $5,000 pay increase.

According to Plaintiff, Belfast's personnel code provides that the City Manager is responsible for disciplining the Code Enforcement Officer, and that an employee may appeal disciplinary action proposed by the City Manager to the Council. The Council may then either concur with the proposed action, or recommend alternative discipline. Thus, the Council's role in disciplinary matters is advisory in nature. To date, Plaintiff has never been disciplined by a City Manager.

In the summer of 1997, at the urging of Council members Lewis and Cheston, the Council hired an attorney, Robert E. Miller ("Miller"), to compile information regarding Plaintiff's job performance for possible use in contemplated termination proceedings. Plaintiff alleges that the Council held secret executive sessions during which his employment was discussed on October 21, November 18, and December 9, 1997. The Council did not invite Plaintiff to attend these sessions and did not disclose their subject matter to him.

After several months, Miller sent Council members a confidential letter (the "Miller Letter") dated January 6, 1998, stating his preliminary determinations that Plaintiff:

> ... has demonstrated a lack of good understanding of the ordinances within his jurisdiction and a failure to enforce local regulations in a uniform and non-discriminatory manner. In my view, the Council will find that his conduct has affected his ability and fitness to perform his duties as Code Enforcement Officer.

> It will be my recommendation that the Council give serious consideration to a revocation of his appointment as Code Enforcement Officer and dismissal as an employee of the City of Belfast ...

(Compl.¶ 21.) Miller had admonished Cheston in the fall of 1997 that disclosure of personnel documents violated Maine law. Upon receiving the Miller Letter in January 1998, however, Cheston immediately presented a copy of it to The Waldo Independent, Inc. which thereafter accurately published its contents.

On February 3, 1998, Miller issued a letter to the Council alleging various deficiencies in Plaintiff's job performance and recommending that he be terminated. Plaintiff alleges that Miller's recommendation was based on false information obtained through the misstatements and illegal acts of Lewis, Whiteley, and Cheston, and that these misstatements and illegal acts were executed purposely to fabricate a foundation for Miller's recommendation.

In support of this contention, Plaintiff alleges that the following conduct occurred: on October 28, 1997, Lewis and Cheston provided a representative of the Building Officials and Code Administrators Institute with mis-

leading information about Plaintiff's decisions in connection with the development of a particular piece of property. The two asked the representative to address all correspondence to them to Lewis's residence rather than to Belfast City Hall.

In the fall of 1997, Lewis entered Plaintiff's locked office at night without his permission, via a doorway otherwise blocked by a photocopier, and removed a file that was sitting on his desk.[2] The file contained information that was potentially damaging to Lewis. Lewis entered Plaintiff's office with the assistance of City Assessor Whiteley, whose office is adjacent to Plaintiff's.

At other times during the fall of 1997, Lewis and Cheston allegedly provided incomplete and misleading information to the State Fire Marshals' Office and the State Planning Office; Lewis and Whiteley contacted Belfast residents and encouraged them to file complaints against Plaintiff; and Lewis participated in the hiring of a third party to surreptitiously tape record a conversation with Plaintiff in order to entrap him. The Council later approved the use of this tape recording in its investigation and Miller eventually published its contents.

In March 1998, the Council held a hearing to evaluate Plaintiff's fitness to continue serving as Belfast's Code Enforcement Officer. Before the hearing, Plaintiff's attorney advised the Council of his belief that it lacked jurisdiction over the matter. In addition, Plaintiff requested that the Council determine as a body whether members Cheston and Lewis harbored prejudice or bias toward him and whether they could determine his fate impartially. The Council rejected Plaintiff's request and permitted each Council member to assess individually his capacity to evaluate Plaintiff impartially. Cheston and Lewis both determined that they could do so, and ultimately, with their participation, the Council voted 3 to 2 to retain Plaintiff in his position. He continues to work in that capacity presently.

Plaintiff's Complaint states that he has suffered the following damages as a result of Defendants' conduct: injury to his reputation (stigmatization as a dishonest and incompetent Code Enforcement Officer); dimming of future employment prospects; unspecified physical and emotional injury; unspecified financial costs incurred in defending his reputation; attorney's fees and costs; and punitive damages as against Cheston, Lewis, and Whiteley.

Plaintiff claims that Belfast violated his due process rights when Cheston published the Miller Letter (Count I), when the Council conducted an investigation and hearing over which it lacked jurisdiction (Count II), and when the Council held executive sessions which violated the Maine Freedom of Access Act (Count III). He also asserts defamation claims against Belfast based on the publication of the Miller Letter (Count IV) and of the surreptitiously-obtained tape recording (Count VII). Plaintiff additionally brings a defamation claim against Cheston based on the publication of the Miller Letter (Count V); a tortious interference with contract claim against Lewis, Whiteley, and Cheston based on their intentionally false and misleading statements to state officials and citizens (Count VI); and an invasion of privacy claim against Lewis and Whiteley based on their unauthorized entry into his office and removal of a file from his desk (Count VIII).

## III. DISCUSSION

### A. § 1983 Claims

 In Counts I, II, and III, Plaintiff alleges violations of 42 U.S.C. § 1983. Section 1983 authorizes actions for relief against "[e]very person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1994). The Four-

---

**2.** While the Complaint does not specify a date, Plaintiff alleges that this unauthorized entry and removal of the file occurred on or about Saturday, November 8, 1997. (Pl.['s] Opp'n to Lewis and Whiteley's Mot. Dismiss at 2.) Lewis and Whiteley state that to the extent the alleged conduct took place, it occurred "no later than November 10, 1997." (Lewis and Whiteley's Reply to Pl.['s] Opp'n to Lewis and Whitcley's Mot. Dismiss at 1–2.)

teenth Amendment dictates that no "State [shall] deprive any person of life, liberty, or property, without due process of law ...." U.S. Const. amend. XIV, § 1. Due process claims may be presented under either of two theories: procedural due process or substantive due process. *See Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir.1991). The essence of a procedural due process claim is that a state actor deprived the plaintiff of life, liberty, or property without adequate procedural protections. *See id.* Substantive due process, in contrast, imposes limits on what a state actor may do regardless of the procedural protections afforded to the plaintiff. *See id.*

In order to state an actionable procedural due process claim, Plaintiff must establish that he has been deprived of a constitutionally cognizable property or liberty interest by a state actor, and that such deprivation occurred without constitutionally adequate procedure. *See Reyes–Pagan v. Benitez*, 910 F.Supp. 38, 43 (D.P.R.1995). The existence of a constitutionally protected property interest "depends in large part upon the extent to which a person has been made secure in [its] enjoyment as a matter of substantive state or federal law." *Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir.1981). Similarly, a liberty interest may derive from the Due Process Clause under state law, a well-established understanding between the parties, or a course of conduct which creates substantial limits on the discretion of state officials. *See Audet v. Board of Regents for Elementary and Secondary Educ.*, 606 F.Supp. 423, 430 (D.R.I.1985).

At an elemental level, procedural due process claims require three distinct allegations: (i) the existence of an interest that falls within the definition of either "property" or "liberty"; (ii) deprivation of that interest by a person acting under color of state law; (iii) without constitutionally adequate process. *See Krennerich v. Inhabitants of Town of Bristol*, 943 F.Supp. 1345, 1352 (D.Me.1996). The requirement that a plaintiff demonstrate a "deprivation" of a proper-ty or a liberty interest is an essential one. *See Krennerich*, 943 F.Supp. at 1353 (finding, in case of plaintiff who alleged termination without due process, a genuine issue of material fact as to whether plaintiff resigned or was terminated and therefore whether he had been "deprived" of acknowledged property interest in his position). It is this issue upon which Plaintiff's § 1983 claims falter.

### 1. The Nature of the Interest Claimed

Initially, Plaintiff claimed that the facts alleged in Counts I and II invoked a deprivation of a liberty interest, and that the facts alleged in Count III invoked a deprivation of his "right to due process of law." (Compl. ¶ 51, ¶ 56, ¶ 60.) The parties' Memoranda concerning Belfast's Motion to Dismiss proceed on these theories.

At oral argument on November 13, 1998, however, Plaintiff explicitly disavowed his claim to have been deprived of a liberty interest and instead asserted that he had been deprived of a property interest during the following colloquy with the Court:

THE COURT: First of all, you agree there's no liberty interest, right?

MR. BEAROR: Yup.

THE COURT: You're saying there is a property interest?

MR. BEAROR: Yes ...

(Unofficial Tr.) In light of the analysis which follows, the Court is satisfied that Plaintiff cannot claim deprivation of either a liberty interest or a property interest on the facts alleged in this case.[3] While Plaintiff may be able to plead several viable state and common law claims, the facts alleged in support of Counts I, II, and III do not give rise to an action of constitutional dimensions.

### 2. Deprivation of a Liberty Interest

Even if Plaintiff had maintained his original liberty interest argument, his allegations are insufficient to sustain a § 1983 due process claim. Of the allegations set forth in Plaintiff's Complaint, his claimed reputation-

---

**3.** The Court observes that Plaintiff has attached a number of documents and exhibits to his Opposition to Belfast's Motion to Dismiss. The Court does not consider these appendages on a Rule 12(b)(6) Motion to Dismiss, and declines to convert Belfast's motion into a Motion for Summary Judgment.

al injury and related projection that future employment opportunities will be diminished as a result of that injury are the only assertions which conceivably could reflect a deprivation of a liberty interest. Fourteenth Amendment "liberties" include "the right of the individual ... to engage in any of the common occupations of life...." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Reputational injury may be relevant to an alleged deprivation of a liberty interest to the extent that the resulting stigma prevents a plaintiff from successfully gaining other employment opportunities. *See Roth,* 408 U.S. at 573, 92 S.Ct. 2701.

 Damage to one's reputation alone, however, is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Only loss of reputation, coupled with a tangible alteration of a right or status previously guaranteed by law, will trigger a deprivation of a constitutionally protected liberty interest. *See id.* at 708–09, 96 S.Ct. 1155. Thus, although state law may provide a remedy for defamatory statements spoken by a government official, no cognizable constitutional injury occurs absent a showing of injury in addition to the reputational harm.

 The First Circuit has been faithful to this "stigma-plus" formulation by requiring a showing of (i) reputational injury and (ii) "a change in the injured person's status or rights under substantive state or federal law." *Silva v. Worden,* 130 F.3d 26, 32 (1st Cir.1997); *see also Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir.1990); *Rodriguez de Quinonez v. Perez,* 596 F.2d 486, 489 (1st Cir.1979); *Cronin v. Town of Amesbury,* 895 F.Supp. 375, 383 (D.Mass. 1995). The fact that employment (or some other status or right) has been affected in the form of termination or other tangible detriment serves as evidence of the seriousness of the harm to a plaintiff's reputation. *See Beitzell v. Jeffrey,* 643 F.2d 870, 877 (1st Cir.1981). Absence of a tangible change in status or rights renders a plaintiff's claim lacking on its face. *See Lyons v. Sullivan,* 602 F.2d 7, 11 (1st Cir.1979) (granting motion to dismiss for failure to state claim upon which relief may be granted in § 1983 liberty interest context where allegedly defamed employee was not terminated but instead resigned); *Koelsch v. Town of Amesbury,* 851 F.Supp. 497 (D.Mass.1994) (granting motion to dismiss for failure to state claim upon which relief may be granted where allegedly defamed employee was not terminated or otherwise tangibly affected in his employment rights); *Cabrero v. Ruiz,* 826 F.Supp. 591, 597 n. 19 (D.P.R.1993) (granting summary judgment for defendant on plaintiff's § 1983 liberty interest claim because allegedly defamed plaintiff never lost his job and therefore could not show accompanying deprivation of tangible interest).

 The case at bar presents a factual scenario falling squarely within the ambit of *Lyons, Koelsch,* and *Cabrero.* Plaintiff has not experienced any tangible change in his employment status or rights—he was never terminated, suspended, demoted, or docked pay, and continues in his position presently. Rather, Plaintiff grounds his liberty interest claim solely in reputational harm and its anticipated effects on future job prospects. In *Koelsch,* however, the Court noted that "an allegation that a defamation impairs future employment opportunities does not suffice to state a claim of deprivation of a constitutionally protected interest." *Koelsch,* 851 F.Supp. at 501. Furthermore, Plaintiff's allegation that he incurred monetary damages in defending his reputation will not support a claim of deprivation of a liberty interest. *See Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("Most defamation plaintiffs attempt to show some sort of ... out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from [reputational injury], it may be recoverable under state tort law but it is not recoverable in a [federal] action"). The Court is persuaded that because Plaintiff has not, and cannot, allege any tangible changes in his employment status or rights, Plaintiff's allegations do not satisfy the "plus" component of the "stigma-plus" test and his liberty interest claim must fail.

### 3. Deprivation of a Property Interest

While Plaintiff's precise theory was not developed at oral argument, the Court assumes that Plaintiff is claiming to have a property interest in his position as Code Enforcement Officer. For purposes of this opinion only, the Court also assumes that, in fact, Plaintiff does have a constitutionally cognizable property interest in his position.[4] It is not, enough, however, for Plaintiff to successfully allege the existence of a constitutionally cognizable property interest. As discussed above, he must also allege a deprivation of that property interest, and in this case, Plaintiff cannot do so. Plaintiff kept his job throughout the entire investigation and hearing process and continues to work in that capacity today. Plaintiff does not allege that he was terminated, suspended, demoted, or denied a promotion, or that his salary or benefits were diminished in any way.[5] In the absence of such a showing, Plaintiff's procedural due process claims cannot go forward. *See Koelsch*, 851 F.Supp. at 500 ("Since [the plaintiff] remains in his job as Town Manager ... the complaint on its face fails to allege that he was deprived of an identifiable property interest."); *Cabrero*, 826 F.Supp. at 597 (D.P.R.1993) (holding that

plaintiff could not bring procedural due process claim based on deprivation of property interest where he maintained his position with same salary and benefits).

One could read Plaintiff's claim to contend that he has been deprived of an alleged interest, independent of his property interest in his job, in the procedures outlined in Belfast's Personnel Code, and presumably in the Maine Freedom of Access Act. (Pl.['s] Opp'n to Def.['s] Mot. Dismiss at 10–13.) Such an argument posits that when the Council deviated from allegedly established procedures, it deprived Plaintiff of a property interest in those procedures. In essence, this claim is one of a property interest in procedure. The Court finds persuasive the following commentary, which indicates that such an argument conflates the distinct elements of due process analysis:

> The Fourteenth Amendment prohibits state deprivation of property or liberty without due process of law. Absent a property or liberty interest, there is no need to consider what process is due. To find that a procedure is a constitutionally protected interest would be to find that a state cannot deprive an individual of due

---

**4.** To demonstrate the existence of a property interest, a plaintiff must show "a legitimate claim of entitlement." *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. Plaintiff has asserted that the disciplinary provisions outlined in Belfast's Personnel Code circumscribe the roles of the City Manager and of the Council in disciplining the Code Enforcement Officer. (Compl.¶¶ 37–39.) To the extent that these disciplinary provisions are linked with termination procedures, this assertion might support a finding that Plaintiff had a property interest in his position. *See King v. Town of Hanover*, 116 F.3d 965, 969 (1st Cir.1997) (noting that employees who can be dismissed only for cause have a property interest in their positions, while at-will employees do not).

Plaintiff's allegations that his reputation has been harmed and that his future employment prospects have been damaged fall under the rubric of "liberty interest" analysis and not "property interest" analysis, because they involve an interest in general employment opportunity, as opposed to a specific interest in particular employment.

**5.** In his Opposition Memoranda responding to the Motions to Dismiss filed by Belfast, Lewis, and Whiteley, Plaintiff for the first time asserts that he was subject to a "salary freeze" because

although he received a $5000 salary raise in the spring of 1997, he did not receive a raise in 1998. The Court observes, however, that Plaintiff has not alleged any facts supporting a characterization of this purportedly anticipated raise as a "property interest," such as facts indicating that such raises were provided for by statute, regulation, rule, or contractual provision, or facts indicating that he had received an annual raise for the majority of his thirteen years of employment with Belfast. *See Dewey v. University of New Hampshire*, 694 F.2d 1, 6 (1st Cir.1982) (noting failure of due process claim because plaintiff could not assert property interest in "specific level of salary increase"); *see also Day v. Board of Regents of the Univ. of Nebraska*, 911 F.Supp. 1228, 1241 (D.Neb.1995) (holding that plaintiff could not claim property interest in salary increases because he pointed to no sources of such entitlement), *aff'd*, 83 F.3d 1040 (8th Cir. 1996); *Kanter v. Community Consolidated Sch. Dist. 65*, 558 F.Supp. 890, 892 (N.D.Ill.1982) (holding that teacher lacked entitlement to salary increase on facts alleged). In this case, Plaintiff has alleged a mere "expectation rather than [an] entitlement[]," *Ballard v. Blount*, 581 F.Supp. 160, 165 (N.D.Ga.1983), and he therefore has not sufficiently alleged the existence of a property interest.

process of law without due process of law. The due process clause mandates procedural protections to protect liberty and property. Procedural safeguards, in themselves, are not liberty or property interests; rather they are designed to safeguard those constitutionally protected interests.

*Brandywine Affiliate, NCCEA/DSEA v. Board of Educ. of Brandywine Sch. Dist.,* 555 F.Supp. 852, 862 (D.Del.1983) (citations omitted). *See also Doe v. Milwaukee County,* 903 F.2d 499, 502 (7th Cir.1990) ("[W]e must be careful to distinguish the substantive right from the procedure designed to prevent its arbitrary deprivation"); *Jackson v. Inhabitants of Town of Searsport,* 456 A.2d 852, 858 (Me.1983) ("[W]hile procedure may serve to protect property rights, it does not, by that association, itself become a property interest").

Thus, to the extent Plaintiff claims to have been deprived of an alleged "property interest" in the procedures outlined in Belfast's personnel code, the Court rejects Plaintiff's contention that he has a "property interest" in such procedural provisions. In addition, to the extent Plaintiff claims to have a property interest in his employment, his claim fails because he has not been deprived of this property interest. As a result, the Court dismisses Plaintiff's § 1983 claims set forth in Counts I, II, and III.

## B. Remaining State Law Claims

Plaintiffs' remaining claims are grounded in the Maine Civil Rights Act (Counts I, II, and III), common law defamation (Counts IV and VII), common law tortious interference with a contract (Count VI), and common law invasion of privacy (Count VIII). Because the Court dismisses all claims over which it had original jurisdiction, the Court dismisses without prejudice these supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Astrowsky v. First Portland Mortgage Corp., Inc.,* 887 F.Supp. 332, 337 (D.Me.1995). These issues are more appropriately resolved in state court.

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS the four Motions to Dismiss.

*SO ORDERED.*