Claribel PAGAN–CUEBAS,
et al., Plaintiffs,

v.

Roberto VERA–MONROIG,
et al., Defendants.

No. CIV. 97–2772(DRD).

United States District Court,
D. Puerto Rico.

March 27, 2000.

Eliezer Aldarondo–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for counter-claimants.

Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for defendant.

Jose R. Cintron–Rodriguez, Department of Justice of PR, Federal Litigation Division, San Juan, PR, for defendant.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for counterdefendant.

Roberto Lefranc–Romero, Santurce, PR, for defendant.

Jose R. Perez–Hernandez, Pierluisi Law Offices, PSC, Hato Rey, PR, for defendant.

Israel Roldan–Gonzalez, Aguadilla, PR, for plaintiff.

William Vazquez–Irizarry, Municipality of San Juan, Office of Legal Affairs, San Juan, PR, for counterdefendants.

## ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Co-defendant's, Germán R. Román–Vélez in his personal capacity ("Román"), motion for summary judgment (Docket No. 48), filed on July 29, 1999. Plaintiffs opposed.[1] (Docket Nos. 73 & 54).

## I. BACKGROUND

Román is the Executive Director of the North Central Consortium—Arecibo ("NCCA" or "the Consortium"), an organization of eight municipalities[2] in the north central region of Puerto Rico. Plaintiffs are Claribel Pagan Cuebas ("Pagan"), Luz Monica Lamboy Lopez ("Lamboy"), Imaris Velaquez Acevedo ("Velaquez"), Lizbeth Mirabal Miro ("Mirabal"), Awilda Alvarado Caraballo ("Alvarado"), Maria D. Gonzalez Luciano ("Gonzalez"), Jaime Barlucea Maldonado ("Barlucea"), David Valentin Luciano ("Valentin"), Onofre Rivera Colondres ("Rivera"), and Javier Molina Millan ("Molina"). They were all employees of the NCCA.[3] They claim that they have suffered discrimination because of their political affiliation and that their rights under the First, Fifth, and Fourteenth Amendments of the Constitution have been violated. They seek monetary and injunctive relief pursuant to 42 U.S.C. § 1983, but also allege 42 U.S.C. §§ 1981 & 2000d.

---

1. As mentioned in the Court's Order of February 29, 2000, (Docket No. 74), Plaintiffs failed to accompany some Spanish language attachments to their opposition with a certified English translation. *See* Local Rule 108.1. Notwithstanding, the Court will adjudicate Roman's motion and the Plaintiffs' opposition without the benefit of the English translations by Plaintiffs. However, the Court again draws the parties attention to the March 7, 2000 Order concerning certified English translations and the ramifications and consequences of noncompliance. Enough said.

2. The Consorcio Norte Central–Arecibo, NCCA's Spanish language equivalent is composed of eight (8) municipalities: Adjuntas, Arecibo, Camuy, Hatillo, Jayuya, Lares, Queradillas, and Utuado.

3. Plaintiffs, Awilda Alvarado–Caraballo, David Valentín–Luciano, and María D. González–Luciano, remain employed at the local Adjuntas office of the NCCA. (Docket No. 54, Exhibits 8–10).

Additionally, Plaintiffs invoke the Court's supplemental jurisdiction for their Puerto Rico law claims. *See* 28 U.S.C. § 1367.

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. *See LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993).

The NCCA is a consortium formed pursuant to Puerto Rico law composed of eight municipalities, including Adjuntas and Arecibo. *See* P.R. LAWS ANN. tit. 21, § 4051(p) (Supp.1993–94). The Consortium's purpose is to establish training and employment programs for economically disadvantaged individuals in both the private and public sectors. The funding for the programs is provided through the federal Job Training Partnership Act. *See* 29 U.S.C.A. §§ 1501—1792b (West 1999). The Act's purpose coincides with that of the NCCA: to implement programs to help disadvantaged individuals to find jobs and receive employment training. *See* 29 U.S.C.A. § 1501.

The NCCA is made up of a Board of Mayors from the eight represented municipalities. The Board provides the norms and guidelines under which the consortium is administrated. The chairman of the Board appoints an executive director, Román whose responsibility is the daily administration and personnel management of the NCCA, including the hiring of personnel.

There is a local NCCA office in each of the member municipalities. Each office is run by a local coordinator. The local coordinator answers to the executive director and an operations specialist. The duties of the local coordinator include overseeing the functions of the local office, managing its activities, supervising its personnel, and promoting in the municipality the programs offered by the office. Pagán was the local coordinator of the Adjuntas office until she was transferred to the central

offices. (Docket No. 54, Exhibit 1). Plaintiffs, Alvarado, Valentín, and González, remain employed at the local Adjuntas office of the NCCA. (Docket No. 54, Exhibits 8–10). The remaining plaintiffs, Lamboy, Rivera, Molina, Mirabal,[4] Barlucea and Velázquez, also worked at the NCCA Adjuntas office, however they allege that they were forced to resign. (Docket No. 54, Exhibits 2–7). They were all employed under one-year contracts with the NCCA that are renewed annually. (Docket No. 54, Exhibits 21–30). All Plaintiffs are activists in the New Progressive Party ("NPP"). (Docket No. 54, Exhibits 1–10).

In 1996, the mayor of Adjuntas was also a member of the NPP. In the mayoral elections that year, Co-defendant, Roberto Vera–Monroig ("Vera"), was the successful candidate. He is a member of the rival Popular Democratic Party ("PDP"). Plaintiffs allege that after Vera took office, in January 1997, they all became subjected to political discrimination.

Plaintiffs state that they requested Román's intervention as executive director of NCCA to protect Plaintiffs from the other defendants illegal actions, but Román failed to investigate or take corrective measures. In June 1997, Román told Plaintiffs at a meeting that they "better start looking for another job" and that hard times awaited them at the NCCA because Vera did not want them working at the local Adjuntas.

Pagán was deprived of her functions relating to the office's summer program; these duties were assigned to PDP member Co-defendant, José A. Vázquez ("Vázquez") appointed by Román. Because Vázquez and the "worksites" were doing her work, Pagán was without duties. Additionally, she began to have problems with Vázquez and the "worksites," the newly-hired participants in NCCA programs. They would not allow Pagán to

---

4. Although Plaintiff, Lisbeth Mirabal–Miró, avers that she was forced to resign, an examination of her sworn statement (Docket No. 54, Exhibit 4) fails to support such contention.

perform her work. Effective September 1, 1997 Pagán was transferred to the NCCA's central office in Arecibo. Pagán avers that the transfer has been a heavy financial burden and moreover, she has been left without any functions to perform.

The other Plaintiffs also complain that their responsibilities were taken away from them after Vera took office and thus, Plaintiffs spend their days "idling and without any duties." Plaintiffs also complain that they were precluded from applying for the Technician III position.

There is evidence that the issue of political patronage did not go unnoticed by the powers that run the NCCA. Co-defendant, Angel Román Vélez, ("Angel Román") the mayor of Arecibo, testified that after the 1996 elections, the NCCA board agreed that each mayor would name the local coordinator in his or her local office. (Docket No. 54, Exhibit 37, p. 12). In order to allow the newly-elected mayors to fill the local coordinator position, the incumbents were given an unsolicited transfer to the central offices and a raise in salary. Each mayor would then be free to name his or her candidate to the now vacant position in the local office. Some of the newly-elected mayors also had lists of people that they wanted to hire to and fire from their local Consortium office. Román wrote to the Mayors to inform them, including Vera, that notwithstanding the new mayors' desire to remove employees from the local NCCA offices, the mayors had not provided a justifiable reason for such actions, and that therefore the employees' contracts were obliged to be renewed. (Docket No. 48, Exhibits 1–3).

## II. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." FED. R. CIV. P. 56(c). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997), and "'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). The court should "'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (quoting *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)) (citations omitted). However, the nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "The court may consider any material that would be admissible or usable at trial." *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed.1998). "But the court should do no more than this in reviewing the quality of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter ....'" *Lipsett v. University of P.R.*, 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Furthermore, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995) (citations omitted). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." *Lipsett v. University of P.R.*, 864 F.2d at 895 (citing

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 242, 106 S.Ct. at 2505).

"We believe that summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.' " *Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *cf. Pullman–Standard v. Swint,* 456 U.S. 273, 288–90, 102 S.Ct. 1781, 1790–1791, 72 L.Ed.2d 66 (1982) (discriminatory intent is a factual matter for the trier of fact); *see also William Coll v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 107 (1st Cir. 1988); *Lipsett v. University of P.R.,* 864 F.2d at 895. "Under such circumstances [state of mind], jury judgments about credibility are typically thought to be of special importance." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983); *see Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir.2000). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## III. DISCUSSION

Román's motion for summary judgment (Docket No. 48), pursuant to Local Rule 311.12, contains the following asserted uncontested material facts set forth verbatim:

1. "Germán Román" obtained legal counseling regarding the applicable laws to the rights of the employees of the North Central Consortium of Arecibo in all matters concerned with termination and renewals of the employment contracts. (See Exhibit # 1, Sworn Statement of Germán R. Román Vélez from February 12th, 1999).

2. "Germán Román" advised the Ma[y]or of Adjuntas that none of the employees of the North Central Consortium of Arecibo could be discriminated solely because of their political affiliation and/or beliefs. (See Exhibit 1).

3. On June of 1997 "Germán Román" sent a letter to the Ma[y]or of Adjuntas informing him that the North Central Consortium of Arecibo employment contracts has to be renewed since there were not valid reasons to discontinue the renovation of these contracts, and for this reason he was going to renew the contracts of the employees. See Exhibit 2 (Letter by "Germán Román" with date of June 16, 1997.)

4. All plaintiffs were hired under the provisions of different employment contracts that stated that they were transitory employees and that the Personnel Law of Puerto Rico was the applicable law governing those contracts. (See Exhibit 3, Sworn Statement of Germán R. Román Vélez from February 18, 1999). See also Exhibit 4[5] (Block of plaintiffs' employment contracts).

(Docket No. 48). Román argues that under these facts he is relieved of liability under § 1983 because: (1) his actions were not reckless and callous in clear disregard to Plaintiffs' rights, therefore, no deprivation of a constitutional dimension has oc-

5. Certified English translations of employment contracts were provided for only the four (4) following plaintiffs: (1) Claribel Pagan Cuebas; (2) Awilda Alvarado Caraballo; (3) Maria D. Gonzalez Luciano; and, (4) David Valentin Luciano. The certified translations are to be provided, as soon as possible, for all Plaintiffs' contracts.

curred; (2) Plaintiffs' have failed to establish a causal link between Román's actions and the alleged constitutional violation; and (3) intervening causes. Also, Román avers, that (4) Plaintiffs' do not have the requisite property interest in their continued employment and thus, their Due Process claim under § 1983 must fail. Lastly, Román believes he is shielded from liability by the (5) defense of qualified immunity because his actions were objectively reasonable.

## A. Due Process claim.

 Plaintiffs claim that Román's conduct has violated their due process rights. Román avers, that Plaintiffs' do not have the requisite property interest in their continued employment and thus, their due process clause claim under § 1983 must fail. A plaintiff bringing a procedural due process claim must demonstrate that state action has deprived her of a constitutionally protected interest in life, liberty, or property without due process of law. See Romero–Barcelo v. Hernandez–Agosto, 75 F.3d 23, 32 (1st Cir.1996); Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991). Hence, Román is correct that where allegations of life or liberty deprivation are absent, as in the instant case, the sine qua non of a due process clause claim under § 1983 is that a state official causes a property loss under color of state law. See Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548(1972). It follows, that for Plaintiffs to have a due process claim, they must have a property interest in their positions. See id. The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. See Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 53 (1st Cir.1990); see also Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (A property interest in employment is a question of state law—by ordinance, contract, etc.); Temple v. Inhabitants of City of Belfast, 30 F.Supp.2d 60, 67 n. 4 (D.Maine 1998) ("To demonstrate the existence of a property interest, a plaintiff must show 'a legitimate claim of entitlement.' ") Id. (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548(1972).). A government employee has a constitutionally protected property interest in continued employment if he reasonably expects that his employment will continue. See King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir.1997) (citing Cummings v. South Portland Hous. Auth., 985 F.2d 1, 2 (1st Cir.1993)). "An employee who can only be dismissed **For Cause** has such an expectation." Id. (emphasis added). Generally, a **transitory or at will** employee does not have a property interest in continued employment beyond the terms of his appointment. See Nieves–Villanueva v. Soto–Rivera, 133 F.3d 92, 94 (1st Cir.1997) (emphasis added); King v. Town of Hanover, 116 F.3d at 969 ("An at-will employee has no reasonable expectation of continued employment. Whether

an employment contract allows dismissal only for cause is a matter of state law."). Thus, whether a dismissal is allowed solely for cause is a matter of state. law. *See King v. Town of Hanover*, 116 F.3d at 969; *Cummings v. South Portland Hous. Auth.*, 985 F.2d at 2. Under Puerto Rico law and First Circuit precedent interpreting the Commonwealth's law, "transitory employees generally do not have a property interest in continued employment beyond their yearly terms of appointment." *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d at 94 (citing *Caro v. Aponte–Roque*, 878 F.2d 1, 4–5 (1st Cir.1989); *see also Melendez v. Municipio de Arroyo*, 96 J.T.S. Case No. 68, at p. 1077, 1996 WL 499166 (P.R. Sup.Ct. May 15, 1996) (reaffirming that, as a matter of Puerto Rico law, transitory employees generally have no "legitimate expectation" to a renewal of their contracts); *Departamento de Recursos Naturales v. Correa*, 118 D.P.R. 689, 697, 1987 WL 448329 (1987) (same).); *see also* P.R. LAWS ANN. tit. 21, § 4554(c) ("Transitory employees shall not exceed one (1) year ..."). On the other hand, Puerto Rico law also identifies employees who hold career positions and can only be removed for cause. *See Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97, 104 (1st Cir.1997) (citing P.R. LAWS ANN. tit. 3, §§ 1301, 1331–1338.). With the above framework in mind, the Court surveys the pertinent facts of this case.

On the one hand, there is evidence that Plaintiffs' positions are transitory ones with one-year fixed terms. *See* (Docket No. 48, Exhibits 3 & 4); *see also* Footnote 5 above.

On the other hand, to rebut Plaintiffs assert that "Plaintiffs held contract positions at the North Central Consortium–Arecibo (NCCA), they were affiliated with the NPP, they worked in the local Adjuntas office, and they had a legitimate expectancy of retaining their jobs and the[y] were entitled to continued employment subjected only to the availability of federal funds (Exibits 21–30)." (Docket No. 54, Statement of Contested Facts # 3). Further, in support of their contention, Plaintiffs state in the memorandum of law that, "Not only were plaintiffs harassed and deprived of their functions due to their political beliefs but plaintiff Claribel Pagán was illegally transferred while plaintiffs Liz M. Lamboy, Onofre Rivera, Javier Molina, Lisbeth Mirabal, Jaime Barlucea and Imaris Velázquez were forced to resign[6]. Hence, plaintiffs right[s] to [ ] due process of law were violated (Exhibits 31–36)." (Docket No. 54, Memorandum of Law, p. 8) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 37 (1st Cir. 1993); *Pedro–Cos v. Contreras*, 976 F.2d 83 (1st Cir.1992)); *see also* (Docket No. 54, Exhibits 1–7)[7].

First, the Plaintiffs concede and their exhibits 21–30 establish that they were transitory contract employees and as such do not have a property interest in their continued employment under Puerto Rico law. (Docket No. 54, Exhibits 21–30); *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d at 94; *Caro v. Aponte–Roque*, 878 F.2d at 4–5; *Melendez v. Municipio de Arroyo*, 96 J.T.S. Case No. 68, at p. 1077; *Departamento de Recursos Naturales v. Correa*, 118 D.P.R. at 697; *see also* P.R. LAWS ANN. tit. 21, § 4554(c). Second, the cases cited by Plaintiffs are clearly inapposite, because therein the plaintiff, pursuant to state law, either could only be discharged for good cause or were career employees. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 538–539, 105 S.Ct. at 1491 (State law which allowed dismissal only for good cause created property interest, an issue not in dispute.); *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d at 36, 41 (Even though First Circuit acknowledged plaintiff was career employee dismissed due process claim due to plaintiff's

6. See Footnote 4 above.

7. See Footnote 3 above.

failure to, *inter alia,* clearly identify "the property right or rights of which he was deprived."); *Pedro–Cos v. Contreras,* 976 F.2d at 84–85 (First Circuit ruled defendants' motion for summary judgment should have been granted on qualified immunity for damages liability and did not raise property interest issue.). Third, the letters, authored by Plaintiffs, self-promulgating their employment status as career positions, simply are insufficient to create a property interest under Puerto Rico law. *See e.g. Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1173–1176 (1st Cir.1988). In *Kauffman,* the First Circuit following Supreme Court of Puerto Rico caselaw standing for the proposition that a dismissed trust employee, even though he should have been classified as a career employee, without facing the acid test required of career employees "was not entitled to a property interest in his job." *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d at 1174 (citing *Colon v. Mayor of Municipality of Ceiba,* 112 D.P.R. 740, 12 P.R. Offic. Trans. 934 (1982)). Here, the dismissed employees have simply not been put through the fire for becoming a career employee and self-imposing such status, via letters, fails to impact the Court's determination. *See id.*

Therefore, the Plaintiffs do not have a property interest to sustain their due process claims and hence, the same are **DISMISSED** and Román's motion for summary judgment (Docket No. 48) is **GRANTED IN PART.** *See Board of Regents of State Colleges v. Roth,* 408 U.S. at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d at 94; *King v. Town of Hanover,* 116 F.3d at 969; *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d at 1173–1176.

### B. First Amendment Claim.

■ The Court pauses momentarily to note that "the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim." *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d at 98.

■ In order for a claim to be cognizable under § 1983, a plaintiff must plead and prove three elements: (1) that the defendant acted under color of state law, *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); (2) that the plaintiff was deprived of federally protected rights, privileges, or immunities, *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 558 (1st Cir.1989); *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Román argues that under the facts of this case there is no causal connection between his actions and a deprivation of Plaintiffs' constitutional rights; an intervening cause precludes his liability; or his actions were not reckless and callous in clear disregard to Plaintiffs' rights, therefore, no deprivation of a constitutional dimension has occurred. Román actions are at the epicenter of this tempest.

■ Plaintiffs claim that they were discriminated against because of their political beliefs violating their First Amendment rights. *See Rutan v. Republican Party of Ill.,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The First Amendment protects government employees in nonpolicymaking or transitory positions "against political affiliation discrimination applied not only to discharges, but also to significant personnel decisions such as whether to hire or promote a public employee." *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d at 98 (citing *Rutan v. Republican Party of Ill.,* 497 U.S. at 79, 110 S.Ct. at 2739–2740); *see LaRou v. Ridlon,* 98 F.3d 659, 661 (1st Cir.1996). Accordingly, a local govern-

ment's decision whether to renew the contract of a transitory employee falls under this ambit. *See id.* (citing *Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125 (1st Cir.1987)). Non-policymaking government employees who allege political discrimination have a threshold burden to produce evidence sufficient to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse employment action taken against them. *See Baez–Cruz v. Municipality of Comerio,* 140 F.3d 24, 28 (1st Cir.1998); *Rodriguez–Rios v. Cordero,* 138 F.3d 22, 24 (1st Cir.1998). To meet this burden, the plaintiff need not produce direct evidence of a politically-based discriminatory animus. *See Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 101–02 (1st Cir.1997). A discriminatory animus may be established with circumstantial evidence alone. *See id.; Acevedo–Diaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993). A highly charged political atmosphere whereby one political party takes over power from another, combined with the fact that the plaintiffs and defendants are of opposing parties may be probative of a discriminatory animus. *See Acevedo–Diaz,* 1 F.3d at 69. The plaintiff must, however, show that there is a causal connection linking defendant's conduct to the plaintiff's political beliefs. *See LaRou,* 98 F.3d at 662; *Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992).

■ Once the plaintiff meets his burden, the government employer must articulate a nondiscriminatory basis for the adverse employment action and must prove by a preponderance of the evidence that the employment action would have been taken without regard to the plaintiff's politics. *See Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Rodriguez–Rios,* 138 F.3d at 24; *Acevedo Garcia v. Vera Monroig,* 30 F.Supp.2d 141, 153 (D.P.R.1998). "The burden of persuasion is on the [defendants] to establish a Mount Healthy defense. 'Summary judgment would be

warranted … only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the demotion.'" *Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d at 103 (quoting *Jirau–Bernal v. Agrait,* 37 F.3d 1, 4 (1st Cir.1994)).

■ The First Circuit has held that a government employer's challenged conduct will be actionable when the conduct results in "a work situation 'unreasonably inferior' to the norm for the position." *See Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1218 (1st Cir.1989). Subsequent to *Agosto–de–Feliciano,* the Supreme Court held that certain deprivations less harsh than dismissal-promotions, transfers, and recalls after layoffs-which are based on political affiliations infringe First Amendment rights. *See Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990). It is unclear how much viability *Agosto–de–Feliciano* retains after the *Rutan* decision. *See Acevedo–Garcia v. Vera–Monroig,* 204 F.3d 1, 10 (1st Cir. 2000); *Acosta–Orozco,* 132 F.3d at 101 n. 5 (Recognizing that it is an open question as to how much of the "unreasonably inferior" rule survives *Rutan.*); *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 705–06 (1st Cir.1993); *Cabrero v. Ruiz,* 826 F.Supp. 591, 598 n. 20 (D.P.R.1993). However, what is clear is that a government employer may not reassign tasks on the basis of party affiliation. *See Acosta–Orozco,* 132 F.3d at 103 n. 7. Additionally, depriving a plaintiff of his responsibilies and leaving him without real duties constitute unreasonably inferior working conditions. *See Rodriguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 39–40 (1st Cir.1993).

■ In the present case, Plaintiffs have adduced evidence that they are active in the NPP and that once Vera, a member of the rival PDP, was elected they were relieved of most of their duties, which were in turn assigned to PDP supporters. Pagán also complains of her unrequested and unwanted transfer to the central offices.

The evidence as to Plaintiffs' losing their duties at work and Pagán's transfer is clearly sufficient to create a genuine issue of fact as to whether they have suffered an adverse employment action. *See Rutan,* 497 U.S. at 74, 110 S.Ct. at 2736 (First Amendment concerns are implicated when an employee who does not compromise her political beliefs is subject to "the hours and maintenance expenses that are consumed by long daily commutes."); *Rodriguez–Pinto,* 982 F.2d at 39–40 (depriving an employee of his duties and leaving him with nothing to do can constitute unreasonably inferior working conditions.).

In addition to showing that they have suffered an adverse employment action, Plaintiffs must also show a causal connection between this action and their political affiliation. *See LaRou,* 98 F.3d at 662. A highly charged political atmosphere whereby one political party takes over power from another, combined with the fact that the plaintiff and defendant are of opposing parties may be probative of a discriminatory animus. *See Acevedo–Diaz,* 1 F.3d at 69. Such a change in power took place in Adjuntas and was followed by the adverse actions of which Plaintiffs complain. Moreover, there is evidence on the record that Vera did not want Plaintiffs working in the Adjuntas office and that he wanted to fire them. There is also evidence on file that Vera and the other newly-elected mayors wanted to bring in their own people into the local NCCA offices. In fact that is precisely what occurred at the local Adjuntas office, and that these new people (allegedly affiliated with the rival PDP) were given duties previously assigned to Plaintiffs.

Román is the executive director of the NCCA. In his motion for summary judgment, he argues that there is no causal connection between his conduct and the Plaintiffs' alleged constitutional injuries. There is evidence that Román knew that Vera wanted to get rid of Plaintiffs and install people of his own choice at the local Adjuntas office. There is also evidence that Plaintiffs visited Román to complain about their treatment, but that he told them that they should start looking for jobs because Vera did not want them in the Adjuntas office. According to the NCCA's regulations, Román is responsible for all personnel decisions at the agency. He was the official ultimately in charge of personnel matters, and therefore would have to be involved in any decisions to hire or transfer. After affording Plaintiffs every reasonable inference, as the Court must in summary judgment, *see LeBlanc v. Great Am. Ins. Co.,* 6 F.3d at 841, the evidence on record could show that not only did Román know about Vera's plans to discard Pagán, he also knew about Plaintiffs' complaints but failed to implement any corrective measures to avert the unlawful results. Thus, the Court holds that a genuine issue of fact exists as to his involvement in the adverse employment actions of which Plaintiffs complain. Accordingly, Román's motion for summary judgment (Docket No. 48), is DENIED IN PART.

### C. Qualified Immunity Defense.

 Qualified immunity shields government officers performing discretionary functions from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right which should have been known. *See Harlow v. Fitzgerald* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir.1998). "Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (citations omitted); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The Su-

preme Court has emphasized that a section 1983 plaintiff must allege a violation of a clearly established right secured by the Constitution or some other federal law." *Camilo–Robles v. Hoyos*, 151 F.3d at 6 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840 n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998)). "General statements of the law are not inherently incapable of giving fair and clear warning, ... a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Lanier*, 117 S.Ct. at 1227 (citation, brackets, and internal quotation marks omitted). "Qualified immunity protects both federal and state officials from liability for damages in a civil rights action if 'a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting] officer [ ] possessed.'" *Aponte Matos v. Toledo Davila*, 135 F.3d at 186 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). The qualified immunity defense paints with a broad brush, protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citations omitted). The two part inquiry is well settled and if the first part is not met then, the analysis halts because "there is qualified immunity." *Aponte Matos v. Toledo Davila*, 135 F.3d at 187.

> "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would "have understood that the challenged conduct violated that established right."

*Id.*, 135 F.3d at 186 (citations omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness. *See Camilo–Robles v. Hoyos*, 151 F.3d 1, 5–6 (1st Cir.1998).

Under the circumstances Román believes his actions were objectively reasonable and therefore, the defense of qualified immunity obviates his liability to Plaintiffs. Román does not contest whether the Plaintiffs' rights were clearly established. *See Rutan*, 497 U.S. at 75–79, 110 S.Ct. at 2737–39; *Acevedo–Diaz*, 1 F.3d at 66; *Nereida–Gonzalez*, 990 F.2d at 705–06; *Rivera–Ruiz v. Gonzalez–Rivera*, 983 F.2d 332, 335 (1st Cir.1993); *Correa–Martinez*, 903 F.2d at 56–57; *cf. Acevedo–Garcia v. Vera–Monroig*, 204 F.3d at 7–11.

■■■■■ The qualified immunity standard is an objective one. *See Crawford–El v. Britton*, 523 U.S. 574, 590, 118 S.Ct. 1584, 1593, 140 L.Ed.2d 759 (1998). "Evidence concerning the defendant's subjective intent is simply *irrelevant* to that defense [of qualified immunity]." *Id.* 523 U.S. at 588, 118 S.Ct. at 1592 (emphasis added). However, the granting of summary judgment based on objectively reasonableness grounds of the qualified immunity defense is not appropriate where there is a factual issue as to an essential element of the plaintiff's claim that bears on the determination of the objective reasonableness of the defendant's actions. *See Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997); *see also Camilo–Robles v. Hoyos*, 151 F.3d at 7–8 (In unusual case when inquiries of "qualified immunity" and "merits" overlap Court may "engage the merits."). Hence, the Court turns to the facts to objectively determine the reasonableness of Román's conduct. The Court has thoroughly examined the evidence proffered by Plaintiffs against Román. In the present case, there are factual issues as to the nature of the conduct of Román, as well as to his motivations behind his conduct. *See Acevedo–Garcia v. Vera–*

*Monroig,* 204 F.3d at 8 ("For a subset of constitutional torts, motivation or intent is an element of the cause of action."). Undoubtably, Román knew that discriminating against Plaintiffs in their employment relationship for political differences was clearly in violation of federal law. Moreover, after Plaintiff are afforded every reasonable inference that can be adduced from the record, there are factual issues as to the essential elements of Plaintiffs' claims, including the nature of the involvement of Román; his motivations or intents for his conduct (e.g., whether Román's actions rise to the level of deliberate, reckless or callous behavior sufficing to § 1983 liability.); and the severity of the alleged adverse actions suffered by Plaintiffs. *See id.* (A constitutional claim for discrimination due to political affiliation "has no meaning absent the allegation of impermissible motive."). The Court is mindful that defendant's subjective intent is irrelevant to the qualified immunity defense. *See Crawford–El v. Britton,* 523 U.S. at 588, 118 S.Ct. at 1592. Nevertheless, the Court holds that after indulging Plaintiffs with every reasonable inference discernable from the facts on record, when viewed objectively permit a finding that Román, as a reasonable person, knew or should have known, that his conduct violated clearly established statutory or constitutional rights of the Plaintiffs. *See Harlow v. Fitzgerald,* 457 U.S. at 817–818, 102 S.Ct. 2727. The Court elaborates briefly.

To bolster his position that his conduct was objectively reasonable, Román states that he had obtained legal advice regarding employment actions to be instituted by NCCA, including the ones in dispute. Next, Román advised the NCCA mayors that none of the employees of the NCCA could be discriminated against solely because of their political affiliation and/or beliefs. (Docket No. 48, Exhibit 1). Finally, Román points to a letter he sent to Vera wherein Román stated:

"After having carefully examined the discussion during the last June 13, 1997 meeting, and reviewed the applicable laws, rules and jurisprudence we reaffirm our position whereby the employment agreements at the consortium's local offices should be renewed at the expiration of the same, unless a reasonable cause exists not to renew them. Since amongst the reasons set forth by you does not exist a reasonable cause required by law, we found ourselves in the obligation of renewing the employment contracts at the local offices of North Central Consortium–Arecibo.

The necessity to comply with the law and to administer the funds from the Consortium within the best dispositions of a healthy public administration, leaves us with no other determination."

(Docket No. 48, Exhibit 2). However, the Court does not believe that Román's advising of NCCA or the letter (infra) are a panacea for the imminent political discrimination about to manifest to Plaintiffs' detriment. Nor are they a talisman warding off all liability regardless of Román's other actions/omissions.

Other evidence on the record, also during that same time-frame, circa June 1997, demonstrates that Plaintiffs visited Román to complain about their treatment. At the meeting Román told Plaintiffs that they "better start looking for another job" and that hard times awaited them at the NCCA because Vera did not want them working at the local Adjuntas. Román was aware of Vera's intentions to discriminate against Plaintiffs for their professed political affiliations. Román is the executive director of the NCCA and as such, is responsible for all personnel decisions at the agency. He was the official ultimately in charge of personnel matters, and therefore would have to be involved in any decisions to hire or transfer. Reiterating, after affording Plaintiffs every reasonable inference, the evidence on record could show that not only did Román know about Vera's plans to discard Pagán, he also knew about Plaintiffs' complaints but failed to implement any corrective measures to

avert the unlawful results. On these facts, the Court held, in Section III.B. infra, that a genuine issue of fact exists as to Román's involvement in the adverse employment actions of which Plaintiffs complain.

Under the circumstances outlined above, the Court holds that Román's actions (i.e., Román's advice to the NCCA and subsequent letter), at this summary judgment juncture where Plaintiffs as nonmovants are given every reasonable inference that can be drawn, were a thinly veiled facade. Notwithstanding that qualified immunity is a question of law, Román's Dr. Jekyll and Mr. Hyde conduct presents a question of credibility, which requires resolution by a trier of fact. The Court holds that through the lens of Román's conduct, there exists at minimum a question of fact whether a reasonable person in Román's position, would have believed that he violated Plaintiffs' federal rights by folding his arms, excepting the advice/letter ("better start looking for another job"), and sitting idly by and allowing or condoning Vera's trampling of Plaintiffs' federally protected rights. *See Aponte Matos v. Toledo Davila*, 135 F.3d at 186 ("The second [inquiry], ... is whether a reasonable officer in the same situation would have understood that the challenged conduct violated that established right."); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Succinctly, there are genuine issues of material fact concerning the actions of Román. *See Acevedo–Garcia v. Vera–Monroig*, 204 F.3d at 7. Thus, the request for qualified immunity is **DENIED.**

**WHEREFORE,** the Court **GRANTS IN PART** Román's summary judgment filed in his personal capacity (Docket No. 48), and thus, Plaintiffs' Due Process claims are **DISMISSED.** The remainder of the motion is **DENIED.**

IT IS SO ORDERED.